UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
EAST RAMAPO CENTRAL SCHOOL DISTRICT.:
                                                            :
                        Plaintiff,                          :
                                                            :
        - against -                                         :        13 Civ. 1613 (PAE)
                                                            :
JAMES P. DeLORENZO, in his official capacity as :
Assistant Commissioner of Education for the State  :        **ORIGINAL FILED BY ECF**
of New York; JOHN B. KING, JR., in his official    :
capacity as the Commissioner of Education for the  :
State of New York; and STATE EDUCATION             :
DEPARTMENT OF THE UNIVERSITY OF THE                :
STATE OF NEW YORK,                                 :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE
THE AMENDED COMPLAINT**


                        ERIC T. SCHNEIDERMAN
                        Attorney General of the
                         State of New York
                        Attorney for Defendants
                        120 Broadway - 24th Floor
                        New York, New York 10271
                        (212) 416-8621
                        Steven.Banks@ag.ny.gov


STEVEN L. BANKS
Assistant Attorney General
   of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

Preliminary Statement.......................................................................................................... 1

Statement Of The Case ........................................................................................................ 2

    Special Education In New York ...................................................................................... 3

    NYSED's Role In Administering The IDEA................................................................... 5

    NYSED's December 19, 2012 Letter To The ERCSD And ERCSD's Response................. 6

Standards Of Review ........................................................................................................... 9

    Rule 12(b)(1)............................................................................................................... 9

    Rule 12(b)(6)............................................................................................................... 9

ARGUMENT ..................................................................................................................... 11

    POINT I        THE ELEVENTH AMENDMENT DIVESTS THE COURT
                   OF JURISDICTION OVER CLAIMS AGAINST NYSED...................... 11

    POINT II      ERCSD DOES NOT HAVE A RIGHT OF ACTION UNDER
                   THE IDEA AGAINST NYSED OR ITS OFFICIALS............................... 12

    POINT III     ERCSD DOES NOT STATE A CAUSE OF ACTION UNDER
                   THE IDEA ........................................................................................... 15

CONCLUSION................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

Alexander v. Sandoval,
    532 U.S. 275 .....................................................................................................................12

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)..................................................................................................... 9-10

Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,
    968 F.2d 196 (2d Cir. 1992) ...........................................................................................9

Bd. of Educ. v. Rowley,
    458 U.S. 176 (1982)..........................................................................................................3

Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz,
    290 F.3d 476 (2d Cir. 2002), cert. denied, 537 U.S. 1227 (2003) .................................... 11-12

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)..................................................................................................... 9-10

Blessing v. Freestone,
    520 U.S. 329 (1997)..................................................................................................... 12-13

C.L. v. Scarsdale Union Free Sch. Dist.,
    No. 11 Civ. 5242, 2012 U.S. Dist. LEXIS 181261 (S.D.N.Y. Dec. 21, 2012)................. 19-20

Cerra v. Pawling Cent. Sch. Dist.,
    427 F.3d 186 (2d Cir. 2005) ..........................................................................................19

County of Westchester v. New York,
    286 F.3d 150 (2d Cir. 2002) ....................................................................................... 13-14

D.B. v. Haverstraw-Stony Point Cent. Sch. Dist.,
    No. 11 Civ. 5421, 2013 U.S. Dist. LEXIS 40437 (S.D.N.Y. Mar. 21, 2013).........................19

DiFolco v. MSNBC Cable LLC,
    622 F.3d 104 (2d Cir. 2010) ..........................................................................................10

Fairfield-Suisun Unified Sch. Dist. v. California Dep't of Educ.,
    No. Civ. S-11-2796, 2012 U.S. Dist. LEXIS 90112 (E.D. Cal. Jun. 28, 2012)......................14

Faulkner v. Beer,
    463 F.3d 130 (2d Cir. 2006) ..........................................................................................10

Fed. Maritime Comm'n v. S.C. State Ports Auth.,
    535 U.S. 743 (2002)........................................................................................................11

Frank G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.,
    459 F.3d 356 (2d Cir. 2006), cert. denied, 552 U.S. 985 (2007) ............................................18

Gagliardo v. Arlington Cent. Sch. Dist.,
    489 F.3d 105 (2d Cir. 2007) ...............................................................................................17

Golden State Transit Corp. v. City of Los Angeles,
    493 U.S. 103 (1989)............................................................................................................13

IDEA Public Charter Sch. v. District of Columbia,
    374 F. Supp. 2d 158 (D.D.C. 2005) ...................................................................................12

Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Public Instruction,
    634 F.3d 1065 (9th Cir. 2011) ...........................................................................................14

Lawrence Twp. Bd. of Educ. v. New Jersey,
    417 F.3d 368 (3d Cir. 2005) ..............................................................................................14

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000) .................................................................................................9

Martin v. Baruch College,
    No. 10 Civ. 3915, 2011 U.S. Dist. LEXIS 17651 (S.D.N.Y. Feb. 18, 2011) ........................11

Morrison v. Nat'l Australia Bank Ltd.,
    547 F 3d 167 (2d Cir. 2008), aff'd, __ U.S. __, 130 S. Ct. 2869 (2010).................................9

Murphy v. Arlington Cent. Sch. Dist.,
    297 F.3d 195 (2d Cir. 2002) .................................................................................................3

Pennhurst State Sch. & Hosp. v. Halderman,
    465 U.S. 89 (1984)..............................................................................................................11

Quern v. Jordan,
    440 U.S. 332 (1979).............................................................................................................11

R.E. v. N.Y. City Dep't of Educ.,
    694 F.3d 167 (2d Cir. 2012) ................................................................................................3

Seminole Tribe of Fla. v. Florida,
    517 U.S. 44 (1996)...............................................................................................................11

Sherman v. Harris,
    No. 11 CV 4385, 2012 U.S. Dist. LEXIS 136621 (E.D.N.Y. Sep. 24, 2012) ........................11

Traverse Bay Area Intermediate Sch. Dist. v. Mich Dep't of Educ.,
    615 F.3d 622 (6th Cir. 2010) ..............................................................................................14

Walczak v. Florida Union Free Sch. Dist.,
    142 F.3d 123 (2d Cir. 1998) ...........................................................................18

Will v. Mich Dep't of State Police,
    491 U.S. 58 (1989)..........................................................................................11


**United States Constitutions**

Eleventh Amendment.............................................................................. 2, 11-12


**Federal Statutes**

20 U.S.C. § 1400 et seq. (Individuals with Disabilities Education Act) ............................ passim
    § 1400.............................................................................................18
    § 1401...............................................................................................3
    § 1403........................................................................................ 11-12
    § 1412..............................................................................2-3, 5, 16-17
    § 1413.............................................................................................3, 5
    § 1414............................................................................................2-4
    § 1415.........................................................................4-5, 8, 13-15, 17
    § 1416..........................................................................................6, 16


42 U.S.C.
    § 1983 .................................................................................... passim


**Federal Rules of Civil Procedure**

Rule 12(b)(1)...............................................................................1, 9, 12

Rule 12(b)(6).........................................................................1, 9-10, 20


**Federal Regulations**

34 CFR
    § 300.323...........................................................................................3
    § 300.508..........................................................................................18

**State Statutes**

N.Y. Education Law

§ 4401................................................................................................................3

§ 4402................................................................................................................4

§ 4404.........................................................................................................5, 8, 15

§ 4404-a ............................................................................................................5

**State Regulations**

8 N.Y.C.R.R.

§ 200.1...............................................................................................................3

§ 200.4...........................................................................................................3, 6

§ 200.5...................................................................................................5, 8, 15, 19

§ 200.6...............................................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                          :
EAST RAMAPO CENTRAL SCHOOL DISTRICT,:
                                                          :
                              Plaintiff,                  :
                                                          :
             - against -                                  :        13 Civ. 1613 (PAE)
                                                          :
JAMES P. DeLORENZO, in his official capacity as :
Assistant Commissioner of Education for the State :        **ORIGINAL FILED BY ECF**
of New York; JOHN B. KING, JR., in his official   :
capacity as the Commissioner of Education for the :
State of New York; and STATE EDUCATION            :
DEPARTMENT OF THE UNIVERSITY OF THE :
STATE OF NEW YORK,                                 :
                                                          :
                              Defendants.                 :
                                                          :
------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THE AMENDED COMPLAINT

### Preliminary Statement

Defendants NEW YORK STATE EDUCATION DEPARTMENT ("NYSED"), JAMES

P. DeLORENZO, Assistant Commissioner in NYSED's Office of Special Education, and JOHN

B. KING, JR., New York State Commissioner of Education, respectfully submit this

memorandum of law in support of their motion to dismiss the Amended Complaint pursuant to

Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff East Ramapo Central School District ("ERCSD") is a public school district in

Rockland County, New York.  See Amended Complaint ("Compl."), dated March 29, 2013, at ¶

4.  It brings this action under 42 U.S.C. § 1983 ("§ 1983") and the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., challenging NYSED's findings concerning

its placement of students with disabilities and NYSED's directive requiring ERCSD to "cease

and desist its practice of routinely allowing one [ERCSD] representative to unilaterally

determine the placement for students with disabilities and override [Committee on Special

Education least restrictive environment] placement recommendations." See Compl. at ¶¶ 2, 35,

56; Compl., Exhibit A (Letter from James P. DeLorenzo to Joel Klein, dated December 19,

2012).  ERCSD contends that NYSED's findings and interpretation of the IDEA and related

regulations are erroneous, and seeks a declaratory judgment declaring that ERCSD's procedure

for resolving parental complaints concerning the placement of a student of with a disability

comports with the requirements of the IDEA.  See Compl. at pp. 14-15 ("Prayer for Relief").

    As more fully set forth below, the Amended Complaint should be dismissed because: (1)

the Eleventh Amendment divests the Court of jurisdiction over NYSED, a state agency; (2)

ERCSD does not have a right of action under the IDEA to bring suit against NYSED or its

officials; and (3) ERCSD has failed to state a cause of action under the IDEA as a result of

NYSED's directives regarding the special education placement of students with disabilities.

Infra, Pts. I-III.

## Statement Of The Case

### Special Education In New York

    The IDEA is a comprehensive legislation that provides federal funding to states that

develop plans to assure "all children with disabilities" a "free appropriate public education"

("FAPE").  20 U.S.C. § 1412(a)(1)(A).  FAPE is defined as "special education and related

services" that:

> (A) have been provided at public expense, under public supervision and direction, and
> without charge;
> (B) meet the standards of the State educational agency;

2

(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
(D) are provided in conformity with the individualized education program required under [the IDEA].

20 U.S.C. § 1401(9).  Responsibilities under the IDEA are divided between local educational agencies, which in most cases are the direct providers of special education programs and services, see 20 U.S.C. § 1413(a)(1), and state educational agencies, such as NYSED, which are given general supervisory authority, see 20 U.S.C. § 1412(a)(11)(A).  New York State receives federal funds under the IDEA, and has enacted statutory and regulatory provisions to meet its obligations under federal law and to implement its own policies regarding the education of students with disabilities.  See N.Y. Educ. Law § 4401 et seq.; 8 N.Y.C.R.R. § 200.1 et seq.

In New York, local school districts are required to develop, at least once a year, an Individualized Education Program ("IEP") for each student with a disability in their jurisdiction. See 8 N.Y.C.R.R. § 200.4(d)(2); see also 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a). The IEP, an annual statement of the student's present level of education performance, the objective goals for the advancement of the student's level of education performance, and the services to be provided to the student to meet those goals, 20 U.S.C. § 1414(d)(1)(A); 8 N.Y.C.R.R. § 200.4(d)(2), is the "'centerpiece' of the IDEA's education delivery system."  R.E. v. N.Y. City Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012) (quoting Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195, 197 (2d Cir. 2002)).  IEPs are not required to "furnish[] . . . every special service necessary to maximize each handicapped child's potential."  Bd. of Educ. v. Rowley, 458 U.S. 176, 199 (1982).  Rather, the IDEA requires that IEPs provide a "basic floor of opportunity," consisting of services that are "individually designed to provide educational benefit" to a child with a disability.  Id. at 201.

3

Under New York State law, responsibility for developing IEPs has been assigned to the relevant Committee on Special Education ("CSE") that each school district is required to establish. See N.Y. Educ. Law § 4402(1)(b)(1). A CSE is to be comprised of "at least:"

> (i) the parents or persons in parental relationship to the student; (ii) one regular education teacher of the student whenever the student is or may be participating in the regular education environment; (iii) one special education teacher of the student, or, if appropriate, a special education provider of the student; (iv) a school psychologist; (v) a representative of such school district who is qualified to provide or administer or supervise special education and is knowledgeable about the general curriculum and the availability of resources of the school district; (vi) an individual who can interpret the instructional implications of evaluation results; (vii) a school physician; (viii) an additional parent, residing in the school district or a neighboring school district, of a student with a disability, of a student who has been declassified and is no longer eligible for an individualized education program (IEP), or a parent of a disabled child who has graduated, for a period of five years beyond the student's declassification or graduation, provided such parent shall not be employed by or under contract with the school district, and provided further that such additional parent shall not be a required member if the parents request that such additional parent member not participate; (ix) such other persons having knowledge or special expertise regarding the student as the school district or the parents or persons in parental relationship to the student shall designate, to the extent required under federal law; and (x) if appropriate, the student.

N.Y. Educ. Law § 4402(1)(b)(1)(a). The CSE fulfills the function of the "IEP Team" under the IDEA. See 20 U.S.C. § 1414(d)(1)(B).

As a recipient of federal funds under the IDEA, New York State and the local school districts are required to "establish and maintain procedures in accordance with" the IDEA "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of [FAPE] by such agencies." 20 U.S.C. § 1415(a). Upon receipt of a parental complaint regarding the placement of a student with a disability, and prior to the initiation of the due process hearing, unless otherwise waived by the parent and the school district, the local school district is required to convene a meeting with the parent and relevant members of the CSE to discuss the complaint and provide the school district an opportunity to

4

resolve the dispute that caused the complaint.  <u>See</u> 20 U.S.C. § 1415(f)(1)(B); 8 N.Y.C.R.R.

§200.5(j)(2).

  If not resolved through the resolution process or by other means such as mediation, <u>see</u>

N.Y. Educ. Law § 4404-a, the parents and school district will proceed to an "impartial due

process hearing," 20 U.S.C. § 1415(f), before an impartial hearing officer ("IHO"), <u>see</u> N.Y.

Educ. Law § 4404(1).  The decision of an IHO may be appealed to a State Review Officer

("SRO") employed by NYSED.  <u>See</u> N.Y. Educ. Law § 4404(2); 20 U.S.C. § 1415(g).  The

SRO's decision may in turn be challenged in either state court under Article 4 of the N.Y. Civil

Practice Law and Rules or in federal court.  <u>See</u> N.Y. Educ. Law § 4404(3)(a); 20 U.S.C. §

1415(i)(2)(A).

## NYSED's Role In Administering The IDEA

  The IDEA accords state educational agencies, including NYSED, a general supervisory

role to ensure that the requirements of the IDEA are met, <u>see</u> 20 U.S.C. § 1412(a)(11)(A)(i), and

that "all educational programs for children with disabilities in the State, including all such

programs administered by any other State agency or local agency" "meet the educational

standards of the State educational agency," 20 U.S.C. § 1412(a)(11)(A)(ii)(II).  Consistent with

the state educational agency's supervisory role, to receive funds under the IDEA, each local

school district is required to demonstrate to the satisfaction of the state educational agency it

provides for the education of students with disabilities within its jurisdiction, and has in effect

policies, procedures, and programs that are consistent with state standards, policies and

procedures established under 20 U.S.C. § 1412.  <u>See</u> 20 U.S.C. § 1413(a)(1).

State educational agencies are required to monitor implementation of the IDEA by local school districts, see 20 U.S.C. § 1416(a)(1)(C)(i), and to examine "quantifiable indicators" in three specified "priority areas," including:

>   (A) Provision of a free appropriate public education in the least restrictive environment.
>
>   (B) State exercise of general supervisory authority, including child find, effective monitoring, the use of resolution sessions, mediation, voluntary binding arbitration, and a system of transition services[.]
>
>   (C) Disproportionate representation of racial and ethnic groups in special education and related services, to the extent the representation is the result of inappropriate identification.

20 U.S.C. § 1416(a)(3).  The performance of the state educational agencies and of the local educational agencies in these priority areas are further monitored by the U.S. Secretary of Education.  Id.

## NYSED's December 19, 2012 Letter To The ERCSD And ERCSD's Response

On December 19, 2012, NYSED Assistant Commissioner DeLorenzo wrote the Superintendent of the ERCSD, Joel Klein, to inform him of the results of a monitoring review conducted by NYSED officials "to determine if the [ERCSD] had appropriately changed practices to correct noncompliance . . . relating to the placement of students with disabilities in private schools when appropriate placements were available in public facilities."  See Compl., Exhibit A at p. 1.  As detailed in Assistant Commissioner DeLorenzo's letter, NYSED's review found that the ERCSD had: (1) failed to produce documentation required by 8 N.Y.C.R.R. § 200.6(j)(1) of efforts to place students with disabilities in the least restrictive environment; (2) violated 8 N.Y.C.R.R. § 200.4(e) in 21 instances where a single representative of the ERCSD at, what it holds out as "resolution meetings," modified the placement that had been approved by the CSE, in several instances by approving placement in a more restrictive environment; and (3)

6

engaged in a pattern of placing students with disabilities in "separate, out-of-district programs for the intended purpose of providing students with Yiddish bilingual special education programs when, in fact, these same students were not identified as English Language Learners (ELL) consistent with the requirements of Part 154 of the Regulations of the Commissioner and when the IEPs of these students indicated that the students did not have bilingual needs that relate to the students' IEPs and the students were recommended for placements in public school programs[.]" Id. at pp. 1-3.

Assistant Commissioner DeLorenzo's letters directed ERCSD to take the following "Required Actions:"

1.     For the 2012-13 and 2013-14 school years, the [ERCSD] must continue the process previously ordered as an enforcement action for submitting paper applications for approval of State reimbursement for private school placements at Rockland Institute for Special Education (RISE), the Community School, and Woods Services to the NYSED Office of Special Education. The District must submit all applications for all students for whom it publicly funds such placements.

2.     The [ERCSD] must immediately cease and desist its practice of routinely allowing one District representative to unilaterally determine the placement for students with disabilities and override CSE [least restrictive environment] placement recommendations.  If the District is attempting to resolve a disagreement between a parent and the CSE, it must use the dispute resolution processes established in federal and State law and regulation.  When settling a dispute, the District must also ensure that it is meeting its federally mandated responsibility that students with disabilities are receiving a free and appropriate public education in the [least restrictive environment], in consideration of the nature and severity of the student's disability.  Further, the District must ensure that the Board of Education is meeting its responsibility to implement the placement recommendations of the CSE in a timely manner consistent with the requirements in section 200.4(e) of the Regulations of the Commissioner of Education.

3.     The [ERCSD] must review the IEPs of all students who have been placed in a public or private out-of-district program for the primary purpose of providing the students with Yiddish programs and submit a plan and timeline for developing in-district programs to meet the needs of such students, as appropriate.

     4.     The [ERCSD] must post the enclosed Notice to the Community for 60 days on the announcement section of its website.

See Compl., Exhibit A at p. 4.

On January 14, 2013, an attorney representing the ERCSD responded to Assistant Commissioner DeLorenzo's letter, taking issue with NYSED's findings and the four "Required Actions" identified by Assistant Commissioner DeLorenzo.  See Compl., Exhibit B.  ERCSD's letter contends that its dispute resolution procedure, including authorizing one district representative to modify a student's placement without additional CSE review, comports with federal and state law.  Id. at pp. 3-6.  Further, ERCSD, apparently interpreting NYSED's second "Required Action" as directing it to cease all dispute resolution efforts under 20 U.S.C. § 1415(f)(1)(B); N.Y. Educ. Law § 4404(1)(a); 20 N.Y.C.R.R. § 200.5(j)(2), argued that the IDEA requires a school district to convene a resolution meeting to address any parental challenge to an IEP.  See Compl., Exhibit B at p. 4.

On February 6, 2013, Assistant Commissioner DeLorenzo responded in writing to the assertions made in ERCSD's January 14th letter.  See Compl., Exhibit C.  Assistant Commissioner DeLorenzo explained that "NYSED is required as part of its general supervisory responsibilities under the [IDEA] to ensure that each educational program for children with disabilities administered within the State meets the educational standards of the State."  Id. at p. 1.  Thereafter, Assistant Commissioner DeLorenzo's letter detailed how the modified placements for the 21 students referenced in the December 19, 2012 letter violated applicable regulations.

     For the meetings the District conducted, which they refer to as 'Resolution Meetings,' NYSED did not find proof that: (1) the parent had filed a due process complaint in accordance with 34 CFR §§ 300.507 and 300.508; (2) the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the due process complaint were included in the meetings; and (3) the District appointed an impartial hearing (IHO) upon receipt of the due process complaint notice from the parent.

Id. at p. 2.  Assistant Commissioner DeLorenzo's letter also confirmed that "NYSED did not require the District to cease negotiating resolution agreements to settle parental disputes."  Id. at p. 3.  Rather, NYSED found a violation in ERCSD's practice "by which it allows one representative to intentionally circumvent IDEA and remove the IEP decision-making process from the CSE, which the findings of the NYSED clearly show."  Id.

On March 11, 2013, ERCSD commenced this federal lawsuit.

## Standards Of Review

### Rule 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a complaint "is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  "In considering a motion to dismiss for lack of subject matter jurisdiction, [courts] accept as true all material factual allegations in the complaint.  However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (internal citations omitted).  In evaluating jurisdictional issues, the court may also properly consider matters outside the pleadings, including state and federal law.  Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, __ U.S. __, 130 S. Ct. 2869 (2010).

### Rule 12(b)(6)

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A complaint that merely alleges facts that are "consistent with" or "compatible with" liability fails to state a cognizable claim.  Twombly, 550 U.S. at 557; Iqbal, 556 U.S. at 678.

In considering the legal sufficiency of a complaint, the Court should accept its well-pleaded factual allegations to be true.  However, the Court is not required to accept as true "legal conclusions" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quotations omitted).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679 (citation omitted).

A court reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) may consider some matters outside the four corners of the complaint.  Specifically, in addition to facts alleged in the complaint, the court may consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010).  "However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'"  Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

## ARGUMENT

## POINT I

## THE ELEVENTH AMENDMENT DIVESTS THE COURT OF JURISDICTION OVER CLAIMS AGAINST NYSED

As a threshold matter, ERCSD's claims against NYSED are barred by the Eleventh Amendment. The concept of state sovereign immunity embodied by the Eleventh Amendment generally deprives federal courts of jurisdiction over suits brought by private parties against state entities regardless of the nature of the relief sought. See Fed. Maritime Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765-766 (2002); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 58 (1996); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). NYSED is undeniably an agency of New York State to which Eleventh Amendment immunity attaches. See Bd. of Educ. of the Pawling Cent. Sch. Dist. v. Schutz, 290 F.3d 476, 480 (2d Cir. 2002), cert. denied, 537 U.S. 1227 (2003); Sherman v. Harris, No. 11 Civ. 4385, 2012 U.S. Dist. LEXIS 136621, at *15 (E.D.N.Y. Sep. 24, 2012) (citing Schutz and dismissing § 1983 and other claims against NYSED on the grounds that the "New York State Education Department is a state agency entitled to Eleventh Amendment immunity.").

Further, New York State has not waived its immunity to § 1983 claims brought in federal court, see Martin v. Baruch College, No. 10 Civ. 3915, 2011 U.S. Dist. LEXIS 17651, at *6 (S.D.N.Y. Feb. 18, 2011), and Congress has not validly abrogated state sovereign immunity with respect to § 1983 claims,[1] see Quern v. Jordan, 440 U.S. 332, 342 (1979). While the IDEA contains its own abrogation clause, see 20 U.S.C. § 1403(a), the Second Circuit has found that "§ 1403(a)'s waiver of sovereign immunity extends only to claims brought pursuant to the IDEA,

---

[1] Plaintiff's § 1983 claims are also barred by the fact that state agencies are not considered "persons" for purposes of § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).

11

not claims brought pursuant to § 1983 or some other statute." <u>Schutz</u>, 290 F.3d at 480 (emphasis in original).  Because ERCSD asserts claims under § 1983 to vindicate purported rights under the IDEA, <u>see</u> Compl. at ¶ 8, NYSED's Eleventh Amendment immunity is not abrogated.

Additionally, it has been held that Congress's abrogation of Eleventh Amendment immunity in 20 U.S.C. § 1403(a) extends only to IDEA claims brought by parents concerning the provision of FAPE to their children, and does not abrogate a state's Eleventh Amendment immunity for claims, as here, brought by a local school district.  <u>See</u> <u>IDEA Public Charter Sch. v. District of Columbia</u>, 374 F. Supp. 2d 158, 166-167 (D.D.C. 2005).

Accordingly, ERCSD's claims against NYSED are barred by the Eleventh Amendment and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## POINT II

### ERCSD DOES NOT HAVE A RIGHT OF ACTION UNDER<br>THE IDEA AGAINST NYSED OR ITS OFFICIALS

While a claim under § 1983 may be brought against state actors to enforce rights created by federal statutory law in addition to federal constitutional rights, <u>see</u> <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4 (1980), an individual claiming a violation of a statutory command cannot automatically bring a federal lawsuit, but must instead show that Congress has created a federal private right of action.  <u>See</u> <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286-87 (2001).  "In order to seek redress through § 1983[,] a plaintiff must assert the violation of a federal right, not merely a violation of federal law." <u>Blessing v. Freestone</u>, 520 U.S. 329, 340 (1997).

Additionally, to be enforceable through § 1983, a right created by federal statute must be intended for the benefit of the plaintiff and must not be foreclosed by another enforcement mechanism.

12

> In all cases, the availability of the § 1983 remedy turns on whether that statute, by its terms or as interpreted, creates obligations sufficiently specific and definite to be within the competence of the judiciary to enforce, is intended to benefit the putative plaintiff, and is not foreclosed by express provision or other specific evidence from the statute itself.

Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 108 (1989) (quotations and citations omitted); see also Blessing, 520 U.S. at 340 (identifying factors to be considered when determining whether a statute gives rise to a federal right including whether Congress "intended that the provision in question benefit the plaintiff").

In passing the IDEA, Congress created a narrow private right of action that allows only a small subset of its provisions to be enforced through direct IDEA lawsuits. Specifically, an action may only be brought pursuant to the IDEA with respect to a matter that could have been raised in an administrative due process complaint. See 20 U.S.C. § 1415(i)(2)(A). Such administrative due process complaints, in turn, can only be filed with regard to "matters relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A). The Second Circuit has stressed that this limited right is the IDEA's only express private right of action, and that, "from the text and legislative history of the IDEA," Congress did not create private right of action in favor of school districts or other local educational agencies to bring suit against a state educational agency. See County of Westchester v. New York, 286 F.3d 150, 152 (2d Cir. 2002) (per curiam). (affirming dismissal of IDEA complaint brought by New York counties against NYSED which alleged that New York State's statutory program for special education services violated the IDEA).

The Second Circuit's decision in County of Westchester is consistent with decisions throughout the country that have also held that the IDEA does not create a right of action for

local school districts to bring suit against a state educational agency.  See Lake Washington Sch. Dist. No. 414 v. Office of Superintendent of Public Instruction, 634 F.3d 1065, 1068 (9th Cir. 2011) ("§ 1415 establishes a private right of action for disabled children and their parents.  It creates no private right of action for school boards or other local educational agencies apart from contesting issues raised in the complaint filed by the parents on behalf of their child."); Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ., 615 F.3d 622, 631 (6th Cir. 2010) ("[T]he IDEA does not provide School Districts with an express or implied right to compel State Defendants' compliance with § 1415(b)'s procedural safeguards absent an underlying claim that directly involves a disabled child's IEP."); Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 371-372 (3d Cir. 2005) (finding that school district had no right of action against state educational agency for cost of disabled child's special education placement).

In short, based on its text and Congressional intent in enacting the IDEA, the ERCSD and other school districts do not have a right of action under the IDEA to challenge directives of a state educational agency concerning their compliance with the IDEA.  See Fairfield-Suisun Unified Sch. Dist. v. California Dep't of Educ., No. Civ. S-11-2796, 2012 U.S. Dist. LEXIS 90112 (E.D. Cal. Jun. 28, 2012) (dismissing school district's claim for declaratory relief "to determine the District's rights and duties regarding compliance complaint review procedures" under the IDEA and for injunctive relief to set aside the state education agency's corrective action against the school district).

Accordingly, for these reasons, the Amended Complaint should be dismissed.

14

## POINT III

### ERCSD DOES NOT STATE CAUSE OF ACTION UNDER THE IDEA

As a separate basis for dismissal, the allegations in the Amended Complaint do not state a cause of action under the IDEA, as the "Required Actions" identified in Assistant Commissioner DeLorenzo's December 19, 2012 letter are consistent with NYSED's general supervisory role in the provision of special education services in New York State and the directive given to ERCSD concerning the conduct of resolution meetings under 20 U.S.C. § 1415(f)(1)(B), N.Y. Educ. Law § 4404(1)(a), 8 N.Y.C.R.R. § 200.5(j)(2) does not conflict with federal law.

Significantly, NYSED has not directed ERCSD to forego the resolution meeting process set forth in federal and state law.  To the contrary, NYSED's directive was that "[i]f the District is attempting to resolve a disagreement between a parent and the CSE, it must use the dispute resolution processes established in federal and State law and regulation."  Compl., Exhibit A (December 19, 2012 letter) at p. 4 (emphasis added).  See also Compl., Exhibit C (February 6, 2013 letter) at p. 3 ("NYSED did not require the District to cease negotiating resolution agreements to settle parental disputes.").  Nor did NYSED direct where a particular student should be placed, or otherwise supplant the CSE's role in formulating IEPs.  See Compl., Exhibit A passim.

Rather, NYSED's directive was that ERCSD cease "its practice of routinely allowing one District representative to unilaterally determine the placement for students with disabilities and override CSE [least restrictive environment] placement recommendations," id. at p. 4, after finding that two-thirds of the resolution meetings held by the ERCSD between June 5, 2012 and September 6, 2012, resulted in a change of the student's placement from a public facility to a

private school program.  Id. at p. 3.  Additionally, NYSED legitimately questioned whether

ERCSD was giving adequate consideration to the recommendations of the CSE and to its

obligations to place a student with disabilities in the least restrictive environment when engaging

in resolution meetings.

> Further, NYSED found that, while the District may be calling its meetings
> 'resolution meetings,' the fact that it conducted 12 'resolution meetings' in one
> day belies consideration of individual factors in reaching these important
> decisions.  It is equally difficult to understand how 12 such meetings could be
> conducted, differences discussed and consensus achieved, within one day unless
> such meetings were 'pro forma' for purposes of unilaterally changing the CSE
> placement recommendations to selected private and out-of-district public school
> programs.

See Compl., Exhibit C at p. 2.

Given the results of NYSED's monitoring review described in Assistant Commissioner

DeLorenzo's December 19, 2012 letter, see Compl., Exhibit A, it was entirely appropriate and

lawful for NYSED in fulfilling its general supervisory role to take action directing ERCSD to

change the way it conducted resolution meetings to ensure that children are being appropriately

placed in the least restrictive environment.  See 20 U.S.C. §§ 1412(a)(11)(A)(i) ("State

educational agency is responsible for ensuring that the requirements of this subchapter are met");

20 U.S.C. § 1416(a)(1)(C)(i) (U.S. Secretary of Education "shall require States to monitor

implementation of this subchapter by local educational agencies").

Plaintiff's objections misconstrue NYSED's directive and are otherwise without merit.

See Compl. at ¶ 56(a)-(d).  First, ERCSD alleges that NYSED has ordered it to "not . . . agree to

a settlement of an IEP dispute with a parent under IDEA that would result in a placement of the

parent(s)' child in a school for special education services that is not in the 'least restrictive

environment.'"  Id. at ¶ 56(a).  In fact, NYSED directed ERCSD to "ensure that it is meeting its

federally mandated responsibility that students with disabilities  are receiving a free and appropriate education in the [least restrictive environment], <u>in consideration of the nature and severity of the student's disability</u>."  <u>See</u> Compl., Exhibit A at p. 4 (emphasis added).  The IDEA expressly mandates that least restrictive environment be a primary consideration when placing children with disabilities:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A).  <u>See also</u> <u>Gagliardo v. Arlington Cent. Sch. Dist.</u>, 489 F.3d 105, 108 (2d Cir. 2007) (noting "the IDEA's strong preference for 'mainstreaming,' or educating children with disabilities '[t]o the maximum extent appropriate' alongside their non-disabled peers.").  In short, based on evidence that ERCSD's resolution meeting settlements with parents resulted in inappropriate placements because little or no consideration was given to least restrictive environment, NYSED properly directed the ERCSD to abide by the legal mandate to place children with disabilities in the least restrictive environment, unless a more restrictive environment is appropriate given the nature and severity of the student's disability.

Second, ERCSD objects that NYSED has directed "that it must not in the future agree to a settlement of an IEP dispute with a parent if the District does not agree with a parent's preferred educational placement, even if a settlement accepting the parent's proposed placement would result in substantial cost savings to the District."  <u>See</u> Compl. at ¶ 56(b).  This objection makes no sense, as the IDEA's settlement process is voluntary, 20 U.S.C. § 1415(f)(1)(B), and the school district is therefore free to accept or reject a parent's requested placement.

More importantly, however, the factors to be considered when formulating the appropriate placement of a student with a disability are well established and do not involve any consideration of the financial impact on the school district.  "Congress enacted the IDEA to promote the education of children with disabilities, to 'ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs [and] . . . to ensure that the rights of children with disabilities and parents of such children are protected.'"  Frank G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist., 459 F.3d 356, 363 (2d Cir. 2006) (quoting 20 U.S.C. § 1400(d)(1)), cert. denied, 552 U.S. 985 (2007).  In developing an IEP, a CSE is required to consider the child's "(1) academic achievement and learning characteristics, (2) social development, (3) physical development, and (4) managerial or behavioral needs," Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 123 (2d Cir. 1998) (citing 8 N.Y.C.R.R. § 200.1(kk)(2)(i)), not cost.

Third, ERCSD objects that NYSED has directed "it must not in the future agree to a settlement of an IDEA dispute with a parent if the parent has submitted a due process complaint in the form of a letter stating the parent's objection to the CSE's recommended IEP, and parental due process complaints must conform to certain requirements that Defendants have not specified."  In fact, NYSED's directive to "use the dispute resolution processes established in federal and State law and regulation," see Compl., Exhibit A at p. 4, makes no mention regarding the form of a parent's complaint about a proposed placement.  In any event, both federal and state regulations describe the content required in a due process complaint including "[a] description of the nature of the problem of the child relating to the proposed or refused initiation or change, including facts relating to the problem; and [a] proposed resolution of the problem to the extent known and available to the party at the time."  34 C.F.R. § 300.508(b)(5)-(6); see also

8 N.Y.C.R.R. § 200.5(i)(1).  The due process complaints at issue in the 21 resolution meetings between June 5, 2012 and September 6, 2012, lacked such specificity each consisting of "a letter from the parents stating that they disagreed with the CSE placement recommendation and were requesting a Resolution Meeting."  <u>See</u> Compl., Exhibit A at 2.

Finally, ERCSD objects that NYSED has directed "that the District may not in the future consider a parent's preference for a certain special educational placement as a 'determinant factor' in negotiating settlements with parents in an IEP dispute."  <u>See</u> Compl. at ¶ 56(d) (quoting Compl, Exhibit C at p. 3).  As already noted, <u>supra</u>, NYSED directed ERCSD to follow "the dispute resolution process established by federal and State law and regulation," and to comply with "its federally mandated responsibility that students with disabilities are receiving a free appropriate public education in the [least restrictive environment]."  <u>See</u> Compl., Exhibit A at p. 4.  Federal law is clear that a parental preference for a private school environment does not trump the obligations of ERCSD and other local educational agencies to provide FAPE in the least restrictive environment.  <u>See</u> <u>Cerra v. Pawling Cent. Sch. Dist.</u>, 427 F.3d 186, 192 (2d Cir. 2005) (parents not entitled to tuition reimbursement for private school placement if the proposed IEP was adequate to afford FAPE); <u>D.B. v. Haverstraw-Stony Point Cent. Sch. Dist.</u>, No. 11 Civ. 5421, 2013 U.S. Dist. LEXIS 40437, at *64-*66 (S.D.N.Y. Mar. 21, 2013) (rejecting parents' complaint to IEP finding that it provided FAPE in the least restrictive environment); <u>C.L. v. Scarsdale Union Free Sch. Dist.</u>, No.11 Civ. 5242, 2012 U.S. Dist. LEXIS 181261, at *31 (S.D.N.Y. Dec. 21, 2012) ("While I sympathize with Plaintiffs' desire to procure the best possible education for CL and with their frustration with the District's failure to provide CL with adequate educational services, it is not the role of the District Court to award tuition reimbursement where it is not shown that a particular placement – even if highly beneficial for

the child – is suited to meet a child's unique needs or that the child required removal from a mainstream classroom.").

Accordingly, even if the Court were to review ERCSD's substantive arguments against NYSED's directives, because ERCSD's allegations fail to demonstrate that NYSED's directives run counter to exiting IDEA obligations, the Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failing to state a cause of action.

**CONCLUSION**

For the foregoing reasons, the defendants respectfully request that the Court grant their motion and dismiss plaintiff's claims against them, with prejudice, in their entirety, together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        April 23, 2013

                                  ERIC T. SCHNEIDERMAN
                                  Attorney General of the
                                   State of New York
                                  <u>Attorney for Defendants</u>
                                  By:

                                  <u> s/Steven L. Banks       </u>
                                  STEVEN L. BANKS
                                  Assistant Attorney General
                                  120 Broadway - 24th Floor
                                  New York, New York 10271
                                  (212) 416-8621
                                  Steven.Banks@ag.ny.gov